UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Paul Berry


   v.                                 Civil No. 07-cv-178-PB

Larry Blaisdell, Warden, Northern
New Hampshire Correctional Facility


**REPORT AND RECOMMENDATION**


     Paul Berry has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his state criminal conviction (document no. 1).  Berry has also filed a motion to hold his habeas petition in abeyance while he completes exhaustion of his claims (document no. 2).  The petition is before me for preliminary review.  See Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts ("§ 2254 Rules") (requiring initial review to determine whether the petition is facially valid); see also United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2) (authorizing the magistrate judge to preliminarily review pro se pleadings).  As discussed herein, I recommend that two of Berry's claims, alleging errors made by the trial judge, be dismissed as untimely filed.  In an Order issued

simultaneously with this Report and Recommendation (hereinafter the "Simultaneous Order"), I direct Berry to amend his petition as to the two claims alleging ineffective assistance of counsel to include facts to clarify whether or not those claims have been timely filed.

## Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review. LR 4.3(d)(2).  In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and an unnecessary dismissals of

claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true. See id. This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

On July 3, 2000, Paul Berry was convicted, after a jury trial, of seventeen counts of aggravated felonious sexual assault and four counts of misdemeanor sexual assault committed on his adoptive daughter. Although he was not tried on the charges until 2000, the assaults are all alleged to have occurred between 1983 and 1989. Berry was sentenced to 56-112 years in prison, the sentence he is currently serving. Berry filed a timely appeal to the New Hampshire Supreme Court ("NHSC"). The NHSC affirmed his conviction on July 23, 2002 in a written opinion, State v. Berry, 148 N.H. 88 (2002). Berry did not seek certiorari in the United States Supreme Court.

In May of 2005, Berry filed a motion for a new trial in the Superior Court raising three claims for relief. One of Berry's claims was denied in an order issued September 26, 2005, and the remaining claims were denied on March 13, 2006, after an

evidentiary hearing.  The Superior Court denied Berry's motion to reconsider on April 19, 2006.  Berry again filed a timely appeal in the NHSC.  The NHSC declined the appeal on July 15, 2006.  Finally, Berry filed a petition for a writ of habeas corpus in the state Superior Court on January 2, 2007, which is still pending in that court.

## The Claims

Berry filed the instant petition on June 13, 2007, raising four claims that he alleges entitle him to federal habeas relief.  The claims all challenge decisions made at trial either by the trial judge or by his attorney.  Berry alleges that these decisions deprived him of federal constitutional rights and resulted in an unconstitutional criminal conviction and sentence.

   1.   Claims #1 & #4: Errors by the Trial Court

Berry's first claim alleges that the trial court denied him his Sixth Amendment right to confront his accuser by unduly restricting his cross-examination of the accuser regarding prior allegations of sexual assault.  Specifically, Berry sought to impeach the complainant at trial with two separate claims of having been "gang raped" by assailants other than the petitioner, which were never established as true.  The trial court ruled that

Berry could impeach the complainant with these prior accusations as they were inconsistent with statements she made to a medical doctor that she had never been sexually assaulted by anyone other than the petitioner.  The trial court prohibited the jury, however, from considering the prior accusations as evidence of the complainant's propensity to lie about sexual assault, and prohibited Berry from introducing the prior accusations to prove their falsity.

Berry's fourth claim alleges that he was denied his Fourteenth Amendment due process rights when the trial court improperly admitted evidence at trial of several uncharged and highly prejudicial prior bad acts of Berry's.  Specifically, the trial court allowed evidence of Berry's prior acts of physical violence against the complainant.  Initially the trial court found that the acts were admissible to explain the complainant's delay in reporting the assaults, as they were evidence that the complainant was afraid that she would suffer violence if she reported the acts.  At trial, however, the complainant did not testify that the reason why she failed to report the abuse for seven years was because she was afraid of Berry.  Berry alleges here that the trial court improperly permitted the evidence

anyway, on the grounds that it was relevant to the jury's understanding of the relationship between Berry and the complainant.

Both of Berry's claims allege that the trial judge made errors in allowing or disallowing evidence, and that those errors resulted in a denial of his constitutional rights.  These issues were litigated at trial, and again on direct appeal to the NHSC or post-conviction.  All of the facts relevant to these issues were known by petitioner at the time of his trial, as they had been openly litigated, presumably in the petitioner's presence.

    2.   <u>Claims #2 & #3 - Ineffective Assistance of Counsel</u>

Berry's second and third claims for relief both allege that his trial counsel was ineffective.  In the second claim, Berry alleges that he was denied his Sixth Amendment right to the effective assistance of counsel, because his trial attorney failed to investigate exculpatory evidence of previous sexual assault accusations the complainant made against him to the New Hampshire Division of Children Youth and Families ("DCYF") that differed factually from the version of the same events to which she ultimately testified at Berry's trial.  Specifically, the complainant claimed that Berry sexually assaulted her between

1983 and 1989.  In 1990 and again in 1994, it appears that DCYF received reports of these sexual assaults, involved the police, and upon investigation of the allegations of assault, DCYF and the law enforcement agencies involved deemed them to be "unfounded," and no prosecution ensued.

Prior to trial, Berry's attorney was provided with a summary sheet of the 1994 DCYF investigation.  Counsel, therefore, was aware of the existence of the prior accusations and investigations, and of the significant changes that were made in the complainant's account of what had occurred to her between the 1994 report and the version of events that the complainant recounted at trial.  Berry alleges that counsel failed to properly investigate or obtain all of the information relevant to the prior investigations, however, which, Berry claims, would have been relevant for impeachment purposes, or might have exonerated him altogether.  At the time of his trial, Berry states that he was not aware that he had previously been investigated by DCYF in 1990 and 1994, and was not aware of the existence of any reports, conclusions reached, action taken, or other information generated as a result of those investigations.

Berry's third claim alleges that prior to trial, Berry's attorney was given the right to review, in camera,[1] five diaries kept by the complainant. One of the diaries, written in 1999, contained a statement by the complainant, regarding a man named Seth, that they "took each others [sic] condomless virginity." Berry asserts that the complainant's statement about losing her virginity after she alleged that the petitioner had engaged in sexual intercourse with her, would have exculpated him if introduced at trial. Berry claims here that his attorney deprived him of his Sixth Amendment right to the effective assistance of counsel by failing to introduce this evidence at his trial. Berry further claims that his attorney not only failed to introduce the evidence at trial, but also failed to tell him about the existence of the diary entry. Berry states that he was unaware of the entry at the time of his trial.

---

[1] Upon review of petitioner's filings in this matter, it appears that the diaries were kept sealed at the Superior Court, and that counsel was permitted to review the diaries at the court, but that counsel was not permitted to freely release the contents of the diaries. The extent of the limitations on the release of the information in the diaries, or whether Berry's counsel was permitted to share information from the diaries with Berry, is not clear from the information presented in the filings.

At some point after Berry's criminal conviction, the complainant sued him in a civil action. As part of the discovery received in the civil case, Berry states that he received the 1994 DCYF summary information and the complainant's diaries. Berry claims that this was the first he knew of either. Berry then used that information in his efforts to obtain a new trial and to petition for a writ of habeas corpus in the state Superior Courts.

## Discussion

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244, sets a one-year limitations period for federal habeas petitions by state prisoners. 28 U.S.C. § 2244(d)(1). AEDPA's one-year limit runs from the time that the state court judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A). In this case, direct review concluded on July 23, 2002 with the NHSC decision. Petitioner had, at that point, an additional ninety days in which he was entitled to seek a writ of certiorari in the United States Supreme Court. As no such petition was filed, the one-year limit set by AEDPA for filing this petition began to run ninety days

after the NHSC decided his case, on October 21, 2002, and expired one year later, on October 21, 2003.

Statutory exceptions to the one-year limitations period exist where an untimely filing was caused by the state, by new constitutional rights created by the Supreme Court, or newly discovered facts underpinning the claim. See David v. Hall, 318 F.3d 343, 344 (1st Cir. 2003); 28 U.S.C. § 2244(d)(1)(B)-(D). The AEDPA further excludes from the one-year limitations period "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . .." 28 U.S.C. § 2244(d)(2). While the limitations period is stopped from running during the pendency of properly filed post-conviction state court litigation, it is not reset or restarted by post-conviction litigation initiated after the AEDPA limitations period has expired. See Trapp v. Spencer, 479 F.3d 53, 59 (1st Cir. 2007) (citing Cordle v. Guarino, 428 F.3d 46, 48 n.4 (1st Cir. 2005)).

In addition to the statutory exceptions, AEDPA's limitations period can be equitably told in exceptional circumstances. Trapp, 479 F.3d at 59; Cordle, 428 F.3d at 48 (citing Delaney v. Matesanz, 264 F.3d 7, 14 (1st Cir. 2001)). Equitable tolling is

reserved for cases in which circumstances which were beyond the petitioner's control prevented prompt filing of the petition. Cordle, 428 F.3d at 48 (citing Lattimore v. Dubois, 311 F.3d 46, 55 (1st Cir. 2002)). Ordinarily, an attorney's excusable neglect is not grounds for tolling the limitations period.[2] See Trapp, 479 F.3d at 60; Cordle, 428 F.3d at 48-49. This is particularly true where the attorney's errors were not the cause of petitioner's failure to file his federal habeas action within the one year limitations period. See id. at 48.

As previously noted, Berry's first and fourth claims before this Court arise out of alleged constitutional deficiencies in his criminal trial occasioned by the trial judge's decisions. Berry obtained all of the information needed to litigate these claims at trial. These issues, therefore, became ripe for federal habeas review upon the NHSC's affirmation of his conviction, and expired on October 21, 2003. Because no petition, or other state-court action was filed during that time, that limitations period was not tolled. Further, I find that Berry has proffered no reason why this Court should find a

---

[2] I make no finding at this stage of review as to whether the actions of Berry's trial attorney in this case were negligent or erroneous in any way.

statutory exception to the limitations period or consider equitable tolling as to these claims.  I therefore recommend that claims #1 and #4 be dismissed as untimely filed.[3]

Berry's second and third claims, however, raise a plausible basis for making an exception to the standard limitations period. In them, Berry alleges that while the deprivation of his right to the effective assistance of counsel occurred at trial, he was unaware of his counsel's errors in investigating and presenting his case until he received the DCYF report and diary entry in the civil action commenced after his criminal conviction.  Berry claims that this constitutes newly discovered evidence, and that some time after receiving that evidence, he fully litigated a motion for a new trial, and is presently in the process of litigating a habeas petition in the state courts.  See 28 U.S.C. § 2244(d)(1)(D) (allowing AEDPA limitations period to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due

---

[3]This Court is permitted, but not obliged, to consider, sua sponte, the timeliness of a state prisoner's habeas petition. Day v. McDonough, 126 S.Ct. 1675, 1684 (2006).  Given the length of time that has passed since the apparent expiration of the limitations period in this case, it is in the interests of justice and judicial economy to resolve the issue of the petition's timeliness at preliminary review if possible.

diligence."). Berry's petition states that "[d]ue to the time limitation of AEDPA, the Petitioner is filing this action to comply with a one year period after the New Hampshire Supreme Court's declination of Petitioner's [appeal of the denial of his motion for a new trial]." If th3 1994 DCYF summary and the diaries were, in fact, newly discovered evidence that, exercising due diligence, Berry could not have discovered prior to the civil action, Berry might be able to argue that the statute of limitations should have begun to run from some date after October 21, 2002, and may not have yet expired at the time this federal petition was filed. I am unable to make that determination, however, based on the facts presented in Berry's petition.

Accordingly, in my Order issued simultaneously herewith, I will direct Berry to amend his petition to include the following specific information:

    a)    The circumstances under which the 1994 DCYF summary and diaries were provided to defense counsel;

    b)    An explanation of why petitioner was unable to review the DCYF summary and diaries at the time defense counsel obtained knowledge of them;

    c)    When, exactly, petitioner received the 1994 DCYF summary and diaries, and under what circumstances he received them;

      d)    A complete description, accompanied by documentation, if any, of any and all requests made by petitioner to his trial attorney for the information in question, including general requests that he be provided with copies of all of the information in his criminal case;

      e)    A complete description, accompanied by documentation, if any, of any and all responses that Berry's trial counsel made to him regarding the information in question.

### Motion to Hold Petition in Abeyance (document no. 2)

It is not yet apparent that any claim in Berry's petition is timely filed. Accordingly, I will withhold ruling on the motion to hold the petition in abeyance until such time as I determine that any of the petition's claims will survive preliminary review.

### Conclusion

I recommend that claims #1 and #4 in Berry's petition, alleging constitutional deprivations by the trial court, be dismissed as untimely. Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14

(1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

                                                 _____
                                                 James R. Muirhead
                                                 United States Magistrate Judge

Date:     July 19, 2007

cc:       Paul Berry, pro se